In 1995, the California Supreme Court was faced with a pressing issue regarding coverage of pollution claims under a comprehensive... Counsel, I thought about Montrose Chemical, the case that you're talking about, and the continuing occurrence theory, which you rely on, and I can't see it. And let me tell you why so you can educate me. With a pollution case, say you have a pipe that's leaking pollutants. The pipe leaks pollutants every day. Say there's an occurrence policy. It doesn't cover occurrences before the effective date of the policy, and it does cover occurrences after the effective date of the policy. What Montrose Chemical says is it doesn't matter that the occurrences started before the effective date of the policy. The occurrences were continuing every day during the policy because they had not been cured. You want to apply that to this case. My problem with that is this. This is not a continuing wrong. The wrong that the city did was when it did a sloppy job when these people purchased. It's so complicated. I'm not sure I really understand it, but I think the sloppy job is to let them buy places for more money than they're allowed to sell them for. It was a colossal mistake on many levels. I think that's what it comes to. But anyway, they didn't do anything since. All they did was not grant a waiver or change the ordinance. Now, that doesn't strike me as analogous to the pipe leaking pollutants. That strikes me as analogous to a car accident resulting in damages before the occurrence policy starts, and the defendant doesn't pay damages, doesn't do anything to cure the wrong before or during the occurrence policy. That occurrence is still not within the coverage because there was nothing new that happened except a failure to do something to remedy the wrong. Why isn't this more like the car accident case than the Montrose chemical pollution issue? Well, among other reasons, the nature of the damages, because the damages are based on market-based property sales at the time a homeowner decides to sell his property. So the damages still continue, but that's true of my car accident case. The person doesn't have enough money to buy a new car, and their car was wrecked. But for coverage purposes here, what we have to look at is what are the plaintiffs claiming. And the plaintiffs were claiming declaratory relief in damages for the imposition of AHP guidelines on their properties, which I submit to you is like a leaky pipe. It was something that occurred before. You're saying that a law that was in effect before the policy remains in effect, unchanged, is like a leaky pipe? It's something new that's happening every day? Again, looking at the allegations. The allegations are whether the city imposes that restriction. Now, the allegations were the city wrongfully imposed that restriction during that time period. But I think in point of fact, this really is the leaky pipe case. This is a barrel of PCBs that get dumped on the property because you have a mistake early on before the policy period. And this is exactly what the insurance industry argued in the Montrose case. They said it's not fair. Why should we be responsible for a mistake that occurred before the policy period and causes harm through the policy period? And Montrose was crystal clear that if you have a continuing harm that exists through that policy period. It's not just a continuing harm. That's a phrase that's certainly used. But if you look at the facts that they were using the phrase to describe, it's not just a continuing damage from a previous harm. It's new harm every day. Continuing and progressive harm. And I submit, while this case is unique, when you have AHP restrictions be imposed on homeowners, you have a very amorphous situation. But you have something that's very real because you have a will of a sovereign. And the issue is whether that will is going to be imposed now or later. And in some of these cases, what happens? The will has been imposed right along. I'm sorry? Now, I can think of a way that the harm could really change. Suppose you have price controls on either sale or rental of real estate. And they're actually not very far from the market, insignificantly distant from the market when they're imposed. But then because of a huge inflation in housing prices, they become really confiscatory. Is that a new harm? That's what happened here. Even though the law has not changed? That's what happened here. Fact. We gave rise to. I think that's a little like Guggenheim versus Goleta, which we decided en banc and we said nothing new, the case is stale. Well, what we have here is an issue of insurance coverage. And we have policy terms where there's a promise of coverage based on whether an occurrence occurred in the policy period. But all they needed was a claims-made policy and they'd be fine. And just so that I'm clear, are you alleging an occurrence or wrongful act on the policy of both? Both. Yes. In fact, those are two, just to be clear, those are two very separate cases of coverage. When you buy these policies, you can buy some insurance companies sell claims-made policies, some sell occurrence policies. And they're, the underwriting is different. Exactly. And in this case, we have a claims-made policy. No, I think you have an occurrence policy. I'm sorry, I misspoke. In this case, we have an occurrence-based policy. Oh, a difference in the world. Well, indeed, because if an occurrence occurred in the policy period, then we have coverage. You'd be fine if it was a claims-made policy because the claim was made during the policy period. Exactly. In which case, there are other insurers that are on the hook for claims that are made and reported within the policy period. Yeah, I've got to say, I practiced 37 years before I went on the bench. Did a lot of stuff in real estate. And I admire your chutzpah for trying this one. This is really something. I mean, the city caused this. They imposed the law. This is a very common law. Lots and lots of municipalities and counties have done this to provide low- and moderate-income housing. These people were simply not given notice. They bought in good faith. The city, they blew it. They blew it. And now we're trying to offload this on the insurance company. But the reality is, unless you can tie on to Montrose, you're out of luck. I agree. Because you've got, you know, it happened a long, long time ago. And as Judge Kleinfeld indicated, the environmental cases are really quite different than this. This was a discreet act that occurred, began, and ended long before the policy period here. The impact is still going on. But what happened occurred. Unlike, say, the environmental, where you've got this creeping crowd going underneath, infecting more and more land, infecting lakes and waters, whereas at the beginning of the period, that wasn't happening. Here, the mistake occurred in time period one. And now we're down the road, you know, period six or seven or whatever it is. And I just, I hope you can help me find out how Montrose could possibly apply here. This is a very different scenario. And I'm afraid if we were to buy your viewpoint, and I'm open-minded, I really am, but if we were to buy this, the mischief this would cause, I mean, this would tie insurance companies, which, you know, they're in the business of taking risk, and they can construe it actuarially. But I can't imagine that they would have ever contemplated that something like this could occur. Let me rest your concern at least on that. Okay. We're dealing with two policies that are effectively moribund. Okay. There's no cases anywhere that would construe these policies. Well, I understand it's the principle I'm talking about, though. And the Great Lakes policy, as you've seen from our reply brief, is an infinitely regressive, tautological policy that just self-absorbs itself. It's ridiculous. And somebody figured it out at some point. But you do agree that unless you can, on Montrose or something equivalent, you agree this case is, you're not going to own this case, right? I do. And I'll tell you a couple reasons why this is unique and why it's not going to have far-reaching consequences. Okay. Number one is, as a simple matter, the Tort Claims Act is going to apply to governmental actions anyhow. And that's why you find a dearth of case law that even deals with wrong flat coverage in the first place because those cases get screened out. So, I mean, we've done nationwide searches on this. Why wouldn't this apply then to a homeowner's association that applied some kind of limitation on an ability to sell a unit within, did they amend, well, I guess they couldn't amend the CC&Rs without going through the state and so on. But let's say hypothetically that they could amend the controlling laws in a way that would affect the property value of their people. Say it was by a military base and they said you can't put an American flag in your unit or, you know, you've got a problem. Right. And then people say, oh, you know, I did it. We're a military base, you know, I can't sell my unit unless you can post an American flag. That's a silly example, I know, but the concept is the same. Well, I understand what you're saying. And bear in mind here that the issue is one of occurrence and whether this is going to have any broad-based appeal. Affordable housing programs are largely limited in California, so you're not going to have other states. New York has a few. New York has a few, but they don't have case law like this, because believe me, I checked to see if they did. But you have an insurance policy, and a policy promises coverage if there's a mistake. If certain predicates occur. If certain predicates occur. And therein lies the rub. Is there anything, for instance, is there anything in either of these policies that says that the property damage must occur during the policy period? Exactly. Montrose addressed that head-on. Remember, you have to remember what the insurance industry said. They raised that argument, Judge, and they said it's not fair because it did not occur within the policy period. And the California court said, yes, it did. They didn't really say it did not occur. What they did was say the wrong that brought it about did not occur within the policy limit, but the harm caused by the wrong was continuing during the policy period. And the way they tied it to the policy was this policy language, including continuous or repeated exposure to condition which results in bodily injury or property damage, neither expected nor intended from the standpoint of the insured. Of course, you don't have bodily injury here. I can't remember California law. In most states, you wouldn't have property damage. You just have diminution of value, which is different from property damage. Well, we do have property damage. In California, you do? Well, under policy because it's a loss of use of tangible property, and these homeowners can't use their homes. Oh, they can. They can use them. They can live in them. They just can't sell them for as much as would be fair. They can't rent them either. They can't rent them for as much as would be fair, too. I'm sorry? They're limited in their ability to get a fair price for sale or rental. Yes. But they're not unusable. They can't use it. Right. Well, using means being able to dispose and alienate your home how you wish. Is there a California authority that says that's property damage, incidentally? No. That's what I thought. There's no authority that actually addresses the issue at all. And also it has to be neither expected nor intended from the standpoint of the insured. Right. The insured here, the municipality certainly does expect and intend that the law restrict the prices on sales and rental. Right. So it means that there would be no coverage because of that clause.  What you have is just a continuous operation of a law here. Even if you – I suppose you could call the law a condition if the other things fitted. Well, that's – I mean, somebody can't sell their house without fulfilling a condition. That's exactly what that is. In fact, the way the whole process works is the homeowner has to give notice to the city and the city determines what price they can sell it to and what is the level of income for a qualified buyer. Those are conditions. Do you want to save any rebuttal time you're down to? Oh, I'm sorry. It's up to you. Thank you. I do. You can keep going if you want to. I would. Let me save a little bit. Okay, great. Okay. All right. We'll hear an argument from the insurance company. Good morning. Rosemary Springer on behalf of Apelli Insurance Company of the State of Pennsylvania. I'm going to – Great Lakes and I are going to split our 15 minutes half and half. Very good. Okay. The city in its briefing in this case and again today at argument – Counsel, how would you phrase the proper distinction between this case and Montrose? I think there's a few. I'm sorry. I can't hear you. There's a few distinctions between this case and Montrose.  Phrase them. The first is that it seems to me, as I understand the city's argument, they're characterizing Montrose as deciding for every CGL policy that occurrence means if there's property damage during the policy period, it doesn't matter if the act, whether it be the accident or the act that caused the damage, happened before or during. Right. Well, I think for the sorts of damages that it speaks to, that is what Montrose says. I don't know that my disagreement is determinative. So many words, actually. But I do disagree because I think the language of the policy in Montrose, Montrose definition, the policies that issues in Montrose – We have your policy language. We have Montrose's policy language in front of us because we have Montrose in front of us. Tell us what words you're talking about when you're talking about Montrose. The definition of property damage in the Montrose case says that the property damage must take place during the policy period. Our policies do not specify when the property damage needs to occur. It says that the property damage needs to rise out of occurrence. Our policies do – Let me just be sure – let me just be sure here. You represent – you're talking about the Great Lakes policy? Insurance – ICSOP. Okay. Because I can say the Great Lakes policy says it's property damage to which this insurance coverage – this coverage part applies first to rising out of an occurrence during the policy period in the coverage territory. Right. So that specifically limits the commencement as during the policy period. Right. That's true for the Great Lakes policy. That's a different policy. Your policy is different, right? Our policy is different. What our policy does specify is that the occurrence or the wrongful act must occur during the policy period. Yeah, during the policy period. The Montrose policy – the policies at issue in Montrose don't have that limitation. And what Montrose made a point – the court in Montrose made a specific point. It's in footnote 2 of the case – I think it's on page 655 – of talking about what triggers coverage. And they said there's no doctrine as to what triggers coverage under a CGL policy or under any type of policy. You look to the specific language of what that policy requires. And what the court in Montrose did is they said we see these policies and they are distinguishing between the act or the accident that causes harm and the harm. And the policies in that case made a clear distinction, as do ours. The policies in that case said the harm must occur during the policy period. Ours say the occurrence or the act must take place in the policy period. So right then and there, we're arguably out of Montrose. So because the city's imposition of the limitations and the errors that follow them occurred before the policy period, from your perspective, it's just out, right? It's out. Okay. And I think what you can – I also think that the city continuously, because I guess it gives them an argument, mischaracterizes the complaints because we also have to go back to the complaints here. For my client, all that's at issue to decide coverage is the policy language, which we just discussed, and the allegations of the homeowners. The homeowners don't say you have wrongfully imposed restrictions on our house. What they say is you should have told us in 2001 that our houses were restricted, and because you didn't, we paid too much. One way they offer to the city to fix this, one equitable remedy they suggest, is, hey, lift the restrictions. Then there's no harm. The city's refused to do that. Okay, so they refuse to grant the rate. So you're saying the homeowners don't challenge the restriction. No. And that's the only thing that's happening now. Right. They challenge the failure to disclose the misinformation that occurred then. Correct. I get it. And it completely mischaracterizes this case to say there's an ongoing imposition of restrictions. None of the homeowners said our homes should not be low income. They said, why didn't you tell us when we bought them? So there's no ongoing harm. Even that argument actually doesn't work. It just makes it sound like there's something going on that there isn't. But it didn't start during the policy period anyway. No. None of this started during it. Nothing started during the policy period. Everything started in 2001. And the monetary relief, which is all our policy also specifically excludes equitable relief. The monetary relief is all tied to the purchase of the homes. And I think it was Judge Kleinfeld that pointed out, as an aside, actually, another way to look at this case is there's no property damage anyway. There's no loss of use. No one is claiming they couldn't use their home. They're saying if we have to sell our home, we might lose money or we might not get as much money as we wanted. They've never shown property damage. So they're arguing two things that really don't exist at all. Is it even clear that they will, in fact, lose money? I don't know that that's clear. I don't know that the record reflects that. Given the economy, everybody's probably going to lose money. Would they have been no different than anybody else? Potentially. Potentially. I'm going to, unless the Court has further questions, I'm going to let counsel put Great Lakes. Okay. Thank you. Good morning, Your Honors. May it please the Court. My name is Bruce Winkleman. I represent Great Lakes Reinsurance, U.K. Judge Kleinfeld, you took my car accident story. When I was preparing for oral argument, I was trying to come up with a good example, and so I apologize if I have to come up with a new example on the fly. But that is precisely the issue, that what the Court would allow if it were to accept that Montrose applies, accept that the policy language is the same as in Montrose, which it is not, accept that there was, in fact, an occurrence, i.e., an accidental happening, which there was not, and accept that there is, in fact, property damage, is you would allow the insured to control when and where the circumstances of coverage. Is Montrose further distinguishable by the point that your colleague just made, in that the homeowners here are not complaining about the restrictions. The corollary here would be they're not complaining about the pollution. They're complaining that they did not receive notice that the conditions existed when they bought the home. That's correct, Judge. If you take a look at the allegations in the AHP litigation, which we- Point us to the specifics. I'm looking at the grant complaint right now. Sure. So, for instance, at the record of 289, you will see that the plaintiffs alleged that the city's breach is included, permitting the sales of the properties, which were approximately 16 months before the Great Lakes policy, failing to review and correct the information, failing to advise the plaintiffs that the sales price was in excess of the AHP restrictions. In addition, the damages, which you will see at page 292 of that complaint, the plaintiffs sought the amount paid in excess of the AHP price restrictions and interest and property tax. In other words, they're looking for the differential. Well, under California law, that's pure economic damage. So- There's no property damage. I wondered about that. As you know from my question, because I'm an Alaska lawyer, is there a case that says that's economic damage, not property damage? Yes, Your Honor. We cite a number of cases that discuss this because it was a- If you take a look at the Great Lakes brief starting at 25- Okay, I'll pick another. I think that the seminal case would be Waller v. Truck. And in that, it's well settled under California law that strictly economic losses like lost profits, loss of anticipated benefit of the bargain, or loss of an investment- Okay, you can get back to your discussion of what the complaint precisely says the city's wrong was. So the complaints talk to a specific moment in time, a specific act, and that is the city's failure to properly review the paperwork that came through before the sales were processed. Now, in the Great Lakes case, the city has conceded, they have stipulated that there is no wrongful act during the Great Lakes policy period, and that is in our supplemental record. And if you take a look at the supplemental record, you will see that the discovery responses by the city are a pretzel logic attempting to comply with- A what? Pretzel logic, Your Honor. Pretzel logic? I've never heard that before. What does it mean? Isn't it the name of a Steely Dan album, Pretzel Logic? It is, Judge Marv, it is. Steely Dan aside, it's a contortionist approach. Like a pretzel? Like a pretzel. It's twisting and turning. What a wonderful day this is. I've added a new word to my vocabulary. Well, you should hear the album. I'm sure I should. Your Honor, we were fortunate enough to watch your arguments, listening to your arguments before, and all of the various sundry topics that you get. I'm just a country insurance lawyer, so we just have to focus on contract language. But in any event, if you take a look at the supplemental record and you take a look at the city's interrogatory responses, their initial response when we asked them how many wrongful acts during the Great Lakes policy period was at least one, and then they supplemented it and said two, and then they supplemented it and said zero. And so at the time of trial, summary judgment, Judge Fischer was only called upon to examine under the Great Lakes policy whether there was an occurrence, i.e. an accidental happening. There was no wrongful act during the policy period. If you take a look at the allegations in the complaint, there's nothing accidental here. I can say it seems to me, at least based upon what the complaint says, that in both the policies, the requisite acts did not occur within the policy period. Is that basically your joint position? That is not only our position. It is also conceded by the city. The city acknowledges that. Instead, what they argue is that somehow there's something continuing here. And they argued that before the district court, and Judge Fischer said, I don't see it. It's just not in the record. Unless there are further questions, Your Honor. Any questions from my colleagues? No. Thank you very much. Thank you. So, Mr. Shaney, I thought you'd get to wind up the day here for us. I'm sure this is going to be great. Of course. Of course. All right. Very briefly. The issue regarding wrongful act under the Great Lakes Policy is not issue on this appeal. We conceded it because their language is very different from the ICHSOP language. Okay. That is at play at issue in this appeal. Judge, if I can't persuade you that Montrose applies, then on the occurrence issue, then we lose. Tell us the sections of the complaint that most suggestively plead some occurrence during the period. The declaratory relief claims themselves. I'm looking at the document. Let's see. Are you talking about the prayer or the causes of action or what? If you look, first of all, let's get clear. There's a claim for negligence, which, of course, is classically covered under a general liability policy. And the negligence is alleged on three bases, that you sold to improper buyers. I'm looking at dates, just like they taught us to do in our bar review course. I'm sorry? I'm looking at dates, just like they taught us to do in a bar review course. I see 1992, 1995, 1998, 2002, 2003. You're talking about the complaints themselves, correct? I'm looking for an occurrence within the policy period in the complaint. An occurrence within the policy period is the claim that the city mistakenly imposed sold homes to these plaintiffs. And I submit to you that's title pollution, short and simple. Title pollution. Title pollution. That's a metaphor. It is. That's not a fact. That's presological. I think it is. A metaphor is based on truth, so I think that it's a fair truth. It's exactly what occurred here. Is that something glommed on to these people's titles here that they couldn't get off. And they got on mistakenly, and they sued to get it off. That's what you said. It's the language that puts it within the policy period. That's what I struggle with on the threshold matter, because at the end of the day, it has to be within the policy period. Where is that language? I would have you look at page 20 and 21 of our reply brief, and I want you to, you know, counsel labors mightily to distinguish the Montrose case. But I want you to listen to this language for a second. You tell me if Aristotle could find a distinction here. It says, Montrose covers this. Property damage during the policy period caused by conditions which result in property damage. That's the Montrose language. Now, here's the Ixop language. Property damage arising out of conditions which result in property damage during the policy period. I submit to you that's not different. That's the same. If it's the same, then the only issue here is, as Judge Kleinfeld points out, is whether these AHP restrictions that glommed onto their titles is just like the PCBs that get dunked in an owner's field. If they're there at the beginning and they're through the policy period. I do have one question for you before we finish up here. It is just so standard that it's hardly worth talking about that when someone purchases real property in California, you get a title policy. And if you looked at the title policy, would these restrictions have appeared in the policy? Well, Justice Stone got to look at that issue here in this case because, as I said, this was a mess on so many levels. The title policies, in fact, said that the homes within the subdivision are, quote, subject to the affordable housing guidelines. And so the homeowners litigated and said that's not definite enough. So did they sue the title company? No. One of the homeowners did sue the title company, as a matter of fact. They might have had a claim there. They had a claim there, and they settled that claim. So they sued the wrong people. Well, they took us by the back of our hair, too. And, you know, what we have here is a promise to pay based on certain terms. And I believe these terms are complied with here. Title pollution. Title pollution. That's a Spielberg movie. Just think how many thousands of tickets. It was a horror. I'm sure it was. Well, thank you both. Thank you all for your arguments. The case of the City of Buenaventura versus the various insurance companies is submitted. And the Court stands in recess for the day.
judges: Marbley, Kleinfeld, Smith